AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

FILED NOV 15 2019
Stephen C. Dries, Clerk

In the Matter of the Search of:

Records and information stored at premises controlled by **Sprint PCS** ("the Provider"), headquartered at 6480 Sprint Parkway, Overland Park, KS 6625 pertaining to cellular telephone assigned call number **797-222-6638**

Case No. 19 m 758

## APPLICATION FOR A SEARCH WARRANT

I, Ryan Meader, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Records and information stored at premises controlled by **Sprint PCS** ("the Provider"), headquartered at 6480 Sprint Parkway, Overland Park, KS 6625 pertaining to cellular telephone assigned call number **797-222-6638**
).

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

evidence of violations of 21 U.S.C. § 841 and 846 involving Jose Camillo Mendez-Pagan or "the Account" during the period January 1, 2018 to May 28, 2019, as more specifically set forth in Attachment B, incorporated by reference herein.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21 U.S.C. Sections 841 and 846.

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _60_ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_/s/ Ryan Meader_
Applicant's signature

Ryan Meader, Narcotics Investigator
Printed Name and Title

Sworn to before me and signed in my presence:
Date: Nov. 15, 2019

_/s/_
Judge's signature

City and State: Green Bay, Wisconsin

James R. Sickel, U.S. Magistrate Judge
Printed Name and Title

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Ryan M. Meader, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(787) 222-6638, IMSI 310120244616118, ESN 089353959302638882** ("Target Cell Phone") and any subsequent telephone number activated as a result of the termination of the Target Cell Phone, telephone number assigned to **IMSI 310120244616118,** or telephone assigned to **ESN 089353959302638882**, whose service provider is Sprint PCS, a wireless telephone service provider. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am an investigative or law enforcement officer of the State of Wisconsin within the meaning of Wis. Stat. § 968.27(10), in that I am empowered by the laws of the State of Wisconsin to conduct investigations of and to make arrests for violations of the laws that I am employed to enforce including those offenses enumerated in Wis. Stat. §§ 961. I am currently a federally deputized law enforcement officer, under the authority and agreement from the Federal Bureau of Investigation, to conduct drug investigations in violation of Title 21, United States Code. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States, who is empowered by law to conduct investigation of, and make arrests for, controlled substance offense enumerated in Title 21, United States Code.

3. Your affiant has been employed by the Green Bay Police Department as a full time sworn law enforcement officer since November 18, 2002. Your Affiant is currently assigned as a Narcotic Investigator with the Brown County Drug Task Force. Your affiant is an active member of the Green Bay Police Departments Gang Task Force since 2009. During this time your affiant has attended training in

1

the basics of Gangs and their cultures, structures, and investigations. Your affiant has also attended Gang and Drug Investigations training put on by Janesville Police Street Crimes Unit. Your affiant has attended 40 hours of specialized clandestine laboratory training from the Drug Enforcement Administration, specifically in the investigation of methamphetamine laboratories, is a member of the Clandestine Laboratory Enforcement and Response Team and has investigated clandestine drug labs. Your affiant has received training in Working with Confidential Informants, and Interview and Interrogation. Your affiant has received on the job training in regards to robbery, battery, drug identification, evidence collection, video/visual/audio surveillance, and search warrant executions. Your Affiant has been a member of Native American Gang and Drug Initiative (NADGI) supervised by State of Wisconsin DCI. Your affiant has prepared numerous affidavits for state search warrants to include title 3 wire, oral, and electronic communications intercepts; your affiant has also been involved in the execution of numerous search warrants. Your affiant has interviewed suspects and confidential informants about their experiences and knowledge of gangs, drug use, and distribution. Through such experience, your affiant is familiar with the nature of drug trafficking, criminal street gangs and the behavior and patterns of those involved in using and distributing controlled substances. Your affiant has worked with numerous informants in the investigation of drug trafficking to provide information and make controlled purchases of drugs. Your affiant is familiar with the street names of various drugs in Wisconsin, as well as the methods that are commonly used by drug dealers to package, ship and prepare controlled substances for sale or use in Wisconsin.

4. The facts in this affidavit come from the Brown County Drug Task Force (BCDTF), the Drug Enforcement Administration (DEA), other law enforcement agencies, and witness statements, all of which I believe to be truthful, in addition to my personal observations, training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

5. As a law enforcement officer, I have participated in the investigation of narcotics-related offenses. I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated in drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the Affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by Jose Camilo Mendez-Pagan a/k/a "Camilo." There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

7. The Brown County Drug Task Force (BCDTF) along with the United States DEA, Federal Bureau of Investigation (FBI), and other law enforcement agencies are investigating Carlos Luis Ramirez-Morales, a/k/a "Coco," and others known and unknown concerning possible violations of Title 21 U.S.C.

§ 846, 841(a), (b)(1)(A) (conspiracy to distribute and possess with the intent to distribute cocaine and heroin) Jose Camilo Mendez-Pagan a/k/a "Camilo" is believed to be a main distributor of narcotics for Ramirez-Morales. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information from other law enforcement officers; pen register, trap and trace, and telephone toll data; controlled buys of drugs, and physical surveillance.

8. In August 2019, CI 1920 provided information about **RAMIREZ-Morales** that was reliable given that CI 1920 made statements consistent with information gathered during the course of the investigation. CI 1920 is currently incarcerated and is utilized for information only. CI 1920 has prior felony convictions and was utilized in other matters where CI 1920's information corroborated information gathered during the investigation. CI 1920 has received monetary compensation in the past.

9. On August 19, 2019, Narcotics Investigator McGinty and your affiant met with CI #1920 who stated that a Puerto Rican male they know as "COMILLO" or "CAMILLO", whom they identified via an unlabeled color photograph as JOSE CAMILLO MENDEZ-PAGAN M/H DOB: 6-5-1990 is known to them to be a "tester" and "distributor" for MORALES. A check of databases indicates that PAGAN has two possible addresses; 1437 Western Av #17 and 2817 University Av # 9, which is also a building within the apartment complex where MORALES resides.

10. In October 2019, CI 1920 provided information about RAMIREZ-Morales that was reliable given that CI 1920 made statements both against CI's penal interest and consistent with information gathered during the course of the investigation. CI 1920 is currently incarcerated and is utilized for information only. CI 1920 has prior felony convictions and was utilized in other matters where CI 1920's information corroborated. CI 1920 has received monetary compensation in the past.

11. Green Bay Police records indicate that MENDEZ-PAGAN provided the telephone number of 787-222-6638 (Target Cell Phone) as belonging to him on both September 5th and 25th 2019.

4

12. On September 24, 2019, your affiant presented a PEN register/trap and trace with geo location search warrant to the Brown County Circuit Courts, Honorable Judge Walsh, who reviewed and signed the warrant for telephone number 920-264-3571, belonging to Carlos Luis Ramirez-Morales. The orders were then served to Sprint.

13. On October 4, 2019, Ramirez-Morales traveled to Milwaukee to pick up narcotics from a source of supply known to law enforcement. Between 2104 hours and 2221 hours Ramirez-Morales 920-264-3574 had contact with 787-222-6638 (Target Cell Telephone) eight (8) times. During this time frame Ramirez-Morales had left the source of supply in Milwaukee, traveled back to Green Bay and arrived at his residence.

14. On October 20, 2019, Ramirez-Morales traveled to Milwaukee to pick up narcotics from a source of supply known to law enforcement. Between 1918 hours and 2120 hours Ramirez-Morales 920-264-3574 had contact with 787-222-6638 (Target Cell Telephone) eighteen (18) times. During this time frame Ramirez-Morales had left the source of supply in Milwaukee, traveled back to Green Bay and arrived at his residence. There was no contact after Ramirez-Morales arrived back in Green Bay.

15. On October 28, 2019, Ramirez-Morales traveled to Milwaukee to pick up narcotics from a source of supply known to law enforcement. Between 2007 hours and 2008 hours Ramirez-Morales 920-264-3574 had contact with 787-222-6638 (Target Cell Telephone) three (3) times. During this time frame Ramirez-Morales had left the source of supply in Milwaukee, traveled back to Green Bay and arrived at his residence. There was no contact after Ramirez-Morales arrived back in Green Bay.

16. It is believed that based upon investigators knowledge that MEDEZ-Pagan is a distributor for Ramirez-Morales, that the contact during Ramirez-Morales's return trip from the source of supply is Ramirez-Morales contacting his distributor and the lack of contact after Ramirez-Morales arrives in Green Bay is due to Ramirez-Morales and MENDEZ-Pagan meeting in person.

17. In response to Administrative Subpoena, Sprint returned records showing that telephone number

787-222-6638 (Target Cell Telephone) was activated on October 19, 2018 and is subscribed to "JOSE CAMILO MENDEZ". Telephone number 787-222-6638 (Target Cell Telephone) has the following identifiers listed: International Mobile Subscriber Identity(s) (IMSI); 310120244616118, Mobile Station Identification Number(s) (MSID); 000004757773709, Electronic Serial Number (ESN/MSN); 089353959302638882, International Mobile Station Equipment Identity (IMEI); no data found.

18. Your affiant used a law enforcement service application called NPAC (National Portability Administration Center) to verify the service provider of 787-222-6638 (Target Cell Telephone) and searched the number 787-222-6638. The number's service provider came back as belonging to SPRINT PCS and found that the cellular telephone had not been ported to another company. Affiant has utilized NPAC (National Portability Administration Center) in the past and found the information to be accurate and reliable.

19. Toll records from 920-264-3571 (Ramirez-Morales Cell Phone) from September 24, 2018, through November 8, 2019, indicate the following:

    a. Between the dates of 09-24-2018 and 11-08-2019 there have been 409 voice calls and 261 text messages.

    b. Contact between Target Cell Phone and "Coco" occur on everyday of the week and on average that least amount of contact has occurred on Tuesdays and Saturdays with between 51 and 57 contacts. Monday is on average the highest day of the week with upwards of 150 contacts.

    c. 210 contacts with 920-264-3571 (Ramirez-Morales Cell Phone) between the dates of 09-25-2019 and 11-08-2019.

    d. These contacts appear to be consistent with the head of the DTO, Ramirez-Morales having contact with a main distributor of narcotics for them, MENDEZ-Pagan.

20. A review of MENDEZ-PAGAN criminal history revealed charges of attenuated aggression, aggravated robbery, and a weapons violation.

21. For these reasons and based upon the facts set forth in this affidavit, I believe MENDEZ-PAGAN is using the Target Cell Phone to operate and further the distribution of controlled substances. Further, I believe records provided by Sprint PCS pursuant to a Court order identifying the specific geographical location of Target Cell Phone will significantly assist law enforcement in identifying those involved in the distribution of controlled substances.

22. In my training and experience, I have learned that Sprint PCS, is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

23. In my training and experience, I have learned that Sprint PCS can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint PCS's network or with such other reference points as may be reasonably available.

24. Based on my training and experience, I know that Sprint PCS can collect cell-site data about the

Target Cell Phone.

**AUTHORIZATION REQUEST**

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

26. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

27. I further request the Court direct Sprint PCS to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint PCS for a 60 day time period from the date when the warrant is signed. I also request that the Court direct Sprint PCS to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint PCS's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint PCS's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint PCS for reasonable expenses incurred in furnishing such facilities or assistance.

28. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

29. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

RYAN M. MEADER
NARCOTICS INVESTIGATOR
FEDERALLY DEPUTIZED LAW
ENFORCEMENT OFFICER

Subscribed and sworn before me this 15 day of November, 2019.

HONORABLE JAMES R. SICKEL
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (787) 222-6638, **IMSI 310120244616118**, (the "Target Cell Phone"); any subsequent telephone number activated as a result of the termination of the Target Cell Phone, telephone number assigned to **IMSI 310120244616118**, whose wireless service provider is Sprint PCS a company headquartered at 6480 Sprint Parkway, Overland Park, KS 66251.

2. Information about the location of the Target Cell Phone occurring for a 60 day time period from the date authorized in this warrant that is within the possession, custody, or control of Sprint PCS including information about the location of the cellular telephone if it is subsequently assigned a different call number.

10

## ATTACHMENT B

### Particular Things to be Seized

1. All information about the location of the Target Cell Phone described in Attachment A for a period of sixty (60) days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II/RTT data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint PCS, Sprint PCS is required to disclose the Location Information to the government. In addition, Sprint PCS must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint PCS's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint PCS's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint PCS for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).